# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF OMAR MORENO ARROYO, by and through its successor-in-interest Tammy Wilson, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br>Defendants. | Case No.: 3:21-cv-01956-RBM-SBC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>**[Doc. 43]** |

Pending before the Court is Plaintiffs Estate of Omar Moreno Arroyo and Tammy Wilson's (collectively, "Plaintiffs") Motion for Leave to File a Second Amended Complaint ("Motion"), which was filed on December 4, 2023. (Doc. 43.) On December 19, 2023, Defendants County of San Diego, William Gore, Emily Lymburn, and Jared Anderson, and "doe" defendants 1–40 (collectively, "Defendants") filed an Opposition to Plaintiffs' Motion ("Opposition"). (Doc. 46.) On January 9, 2024, Plaintiffs filed a Reply to Defendants' Opposition ("Reply"). (Doc. 51.)

The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

# I. BACKGROUND

## A. Plaintiffs' First Amended Complaint

### 1. General Allegations

On November 16, 2021, Plaintiffs filed the present action against Defendants. (Doc. 1.) On April 8, 2022, Plaintiffs filed a First Amended Complaint ("FAC") alleging the following causes of action: (1) False Arrest/False Imprisonment (42 U.S.C. § 1983); (2) Denial of Medical Care (42 U.S.C. § 1983); (3) Right of Association (42 U.S.C. § 1983); (4) Failure to Properly Train (42 U.S.C. § 1983); (5) Failure to Properly Supervise and Discipline (42 U.S.C. § 1983); (6) *Monell* (42 U.S.C. § 1983); (7) False Arrest/False Imprisonment; (8) Negligence; (9) Bane Act Violation (Cal. Civ. Code § 52.1); and (10) Wrongful Death (Cal. Code of Civ. Proc. § 377.60 *et seq*.). (Doc. 13 at 1.)[1]

Plaintiffs allege that, on January 6, 2021, Omar Moreno Arroyo ("Arroyo") "was under the influence of methamphetamine and was behaving in a paranoid and irrational way: looking under the bed, and in the closet, and using a drill to make holes in the floor and walls of their home." (Doc. 13 ("FAC") at 3.) His wife, Tammy Wilson ("Wilson"), called 911 to request help. (*Id.*) "[Wilson] explained to the dispatcher what was happening and explained that her husband was not violent, and had not harmed her, but was behaving bizarrely. The dispatcher characterized the call as a '5150 – PSYCH' event in reference to California Welfare and Institutions Code [section] 5150." (*Id.*)

Plaintiffs allege that, at approximately 11:30 a.m., San Diego Sheriff's Department deputies arrived at Arroyo and Wilson's home and placed Arroyo in handcuffs. (*Id.*) The deputies "looked around the house and located a glass pipe" and subsequently took Arroyo to the San Diego Central Jail Facility where he was booked. (*Id.*) "They decided to change the call from … Welfare and Institutions Code [section] 5150 (relating to a commitment for mental health evaluation) to Health and Safety Code [section] 11550[] (criminal offense

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.

of under the influence of a controlled substance)." (*Id.*)  "In doing so, they ignored all evidence of [Arroyo] being in medical and psychiatric distress and in need of immediate medical care …." (*Id.*)  "These deputies and the sergeant knew that being under the influence and being in possession of drug paraphernalia were not bookable offences under the County's Covid 19 policies … [so] these defendants decided to make up a charge of 'being drunk in public' … so that he would be accepted into custody at the Jail." (*Id.* at 3–4.)

Plaintiffs allege that "[Arroyo] should have been taken to a hospital facility because he was in a state of acute methamphetamine intoxication and agitation, was unable to care for himself, and was in danger of death due to his heart condition." (*Id.* at 4.)  Plaintiffs explain that the deputies "failed to communicate to the medical intake staff that [Arroyo] had a heart condition and took daily medication for his heart" and that "[Arroyo] was suspected to be under the influence of methamphetamine or that [Arroyo] was having a mental health crisis." (*Id.*)  Plaintiffs also explain that "[a]n x-ray administered before he was admitted to the jail showed what appeared to be a foreign object in his abdomen, suspected to be a baggie of an illicit substance[,]" and that "[j]ail officials did not take [Arroyo] to a hospital facility." (*Id.*)  Rather, Arroyo was placed under a "book and release" status. (*Id.*)

Plaintiffs allege that "[j]ail authorities placed [Arroyo] in a holding cell and subsequently failed to monitor his condition." (*Id.*)  "While in a holding cell waiting to be released, [Arroyo] collapsed and began having seizure like activity.  [Arroyo] was unable to breathe because a mask and a food bolus in his throat caused an obstruction in his airway." (*Id.*)  "Despite [Arroyo's] critical medical distress, no jail personnel responded properly or timely.  They left him there to die for over an hour." (*Id.* at 4–5.)  Plaintiffs contend that "[j]ail personnel did not commence life-saving measures until it was too late" and that Arroyo "died on the floor of his jail cell." (*Id.* at 5.)

### 2. The DOE Defendants

Plaintiffs allege that "['doe' defendants] 1–2 were San Diego County Sheriff's deputies who arrested [Arroyo] on January 6, 2021" and that "[o]ne of them is believed to be a sergeant." (FAC ¶¶ 14, 32.) Specifically, Plaintiffs allege that, "[a]t approximately 11:30 a.m., San Diego Sheriff's deputies, Defendants Anderson and ['doe' defendants] 1 and 2, arrived at [Arroyo] and [Wilson's] home. They placed [Arroyo] in handcuffs and took him to the porch." (*Id.* ¶ 31.) "Anderson and ['doe' defendants] 1–2 knew that being under the influence of methamphetamine was not a bookable offence." (*Id.* ¶ 181.) "Defendants Anderson and ['doe' defendants] 1–2 … knew that Omar was suffering acute methamphetamine intoxication and agitation, but failed to render aid, call for a doctor, or transport him to the hospital." (*Id.* ¶ 193.) Likewise, they "knew that Omar's pulse was 160 beats per minute" and, "[i]nstead of rendering aid to a man in medical and psychiatric crisis, these defendants decided to phony up a charge so they could change the nature of the call from 5150 (psychiatric help) to being drunk in public." (*Id.* ¶ 196.) Defendants Anderson and "doe" defendants 1–2 were required to give truthful and complete information to the jail booking staff that Arroyo was suffering from acute methamphetamine intoxication, had a heart condition, was under the care of a cardiologist, and was required to take daily heart medication. (*Id.* ¶¶ 196–98.)

Plaintiffs allege that "['doe' defendant] 5 was a [j]ail staff member and operator of the body scanner who never identified or inquired with [Arroyo] about anomalies on his body scan. ['Doe' defendant] 5 saw that there was a baggie in Omar's body and failed to take any action." (*Id.* ¶¶ 16, 59.) "According to SDSD video surveillance footage, ['doe' defendant] 5 was seen continuously looking at paperwork while he conducted [Arroyo's] body scan. He then brightened the scan and simultaneously walked away from the machine." (*Id.* ¶ 60.) "['Doe' defendant] 5 was required to make an inquiry upon seeing an anomaly. He was required to ask the detainee to voluntarily turn over the object and re-scan the body to verify all contraband was removed." (*Id.* ¶ 64.) Yet, "['doe' defendant] 5 failed to indicate possible contraband on [Arroyo]'s scan, and as a result, Omar was never

put on contraband watch." (*Id.* ¶¶ 67, 202.) "['Doe' defendant] 5 was required to further analyze these parts of the image using the different image analysis tools. Additionally, based on the results of the further analysis, [Arroyo] should have been rescanned to see if the anomaly was still present after 30 minutes to determine if the anomaly was body waste or gas. ['Doe' defendant] 5 failed to do so." (*Id.* ¶¶ 69, 204.) "['Doe' defendant] 5 was required to save the image in the 'positive tab folder' with a descriptive label for future reference and/or comparison. He failed to do so." (*Id.* ¶ 201.) "['Doe' defendant] was required to further analyze these parts of the image using the different image analysis tools." (*Id.* ¶ 204.) Instead, "['doe' defendant] 5 saw the anomaly and ignored it. Had [Arroyo] been placed on contraband watch, he would have been closely monitored and watched for any adverse reaction from methamphetamine toxicity. This includes irrational, self-harming behaviors." (*Id.* ¶ 72.) "[Arroyo] was cleared as 'fit for booking,' per medical staff, ['doe' defendant] 5[,] and Defendant Lymburn." (*Id.* ¶ 73.)

Plaintiffs allege that "['doe' defendants] 6–20 were medical staff and correctional staff, including contractors, within the San Diego Central Jail who were responsible for [Arroyo's] screening, assessment, intake, booking, housing …, safety checks, and monitoring once [Arroyo] was in the Central Jail." (*Id.* ¶ 17.) "During the medical screening process, in addition to the X-rays, Defendant Lymburn and ['doe' defendants] 6–20 … learned from Omar that he 'smoked meth a lot.'" (*Id.* ¶ 75.) "Despite the knowledge that [Arroyo] may have ingested a baggie of drugs and had a foreign object in his stomach, Lymburn and ['doe' defendants] [6]–20 did not take [Arroyo] to a hospital facility as required under the Sheriff's Department 'Receiving Screening' detentions policy for jail admission." (*Id.* ¶ 76.) "Defendants Lymburn and ['doe' defendants] [6]–20 … had an obligation to transport [Arroyo] to a hospital to have him medically evaluated in an acute care facility and properly assess [Arroyo] for booking into the [j]ail." (*Id.* ¶ 77.) Defendant Lymburn and "doe" defendants [6]–20 "failed to ensure prompt medical attention, administration of medication, or immediate access to medical diagnosis and care." (*Id.* ¶ 78.) Defendant Lymburn and "doe" defendants [6]–20 "should have denied

5

[Arroyo] admission into the jail and ordered Anderson or other deputies to transport [Arroyo] to the emergency room of a hospital." (*Id.* ¶ 80.) Defendant Lymburn and "Doe" defendants 5–20 "deprived [Arroyo] of medical monitoring and assessment once they admitted him into the jail." (*Id.* ¶ 81.) Defendant Lymburn and "doe" defendants [6]–20 "knew that when [Arroyo] was x-rayed during booking, the x-ray revealed what appeared to be a foreign object in his abdomen, suspected to be a baggie of an illicit substance." (*Id.* ¶ 213.) "Upon identifying a foreign object in [Arroyo's] abdomen in an x-ray, medical staff … [was] required to send [Arroyo] to the hospital" or "ensure that Omar was monitored." (*Id.* ¶¶ 214–15.)

Finally, Plaintiffs allege that "['doe' defendants] 21–40 were supervisors at the San Diego County Sheriff's Department who were responsible for supervising, disciplining, and training subordinate individual defendants in this case." (*Id.* ¶ 18.) "Despite the fact that injury or death from drug or alcohol use is a recurring situation, [they] failed to implement a policy or training on how to book and monitor detainees coming into the Jails with symptoms of dangerous drug use or overdose." (*Id.* ¶ 110.) "[They] failed to implement proper protocols to comply with that policy to ensure that people who were at risk of dying from overdose or withdrawal would be monitored and given medical care." (*Id.* ¶ 113.) "[They] did nothing to provide adequate medical care to those who died from overdose or withdrawal." (*Id.* ¶ 143.)

**B.     Plaintiffs' Motion**

In their Motion, Plaintiffs "move this Court for leave to file a [s]econd [a]mended [c]omplaint identifying [the 'doe' defendants] and alleging claims against the newly identified ['doe'] defendants." (Doc. 43 at 2.) Plaintiffs first argue that leave should be freely granted under Federal Rule of Civil Procedure 15(a)(2) because each relevant factor weighs in favor of granting Plaintiffs leave to amend their FAC and because Plaintiffs are entitled to an opportunity to test their claims on the merits. (*Id.* at 3–6.) Specifically, Plaintiffs argue that there is no prejudice to the current or future defendants because discovery has just started in this case, Plaintiffs sought leave to file a second amended

complaint by the deadline set forth in the parties' scheduling order, the pretrial conference is not scheduled until November 14, 2024, and a trial date has not been set. (*Id.* at 4–5.) Plaintiffs also argue that the newly identified defendants are all agents and employees of the County of San Diego, so their interests overlap with the existing municipal defendants. (*Id.* at 5.) Plaintiffs further argue that they have not acted in bad faith in seeking leave to file an amended complaint. (*Id.*)

Second, Plaintiffs argue that amendment would not be futile because the statute of limitations "relates back" to the filing of their original complaint. (*Id.* at 6–7.) Specifically, Plaintiffs argue that, in situations where federal and state law conflict, districts courts apply the more lenient "relation back" standard, here California law. (*Id.* at 6.) Plaintiffs argue that California law permits the use of fictitious names, e.g., DOES 1–40, in instances where plaintiffs are genuinely ignorant of the identity of the proper defendants so that they can file a complaint before the statute of limitations runs. (*Id.*) Then, when the identity of the defendant is ascertained, plaintiffs may amend the complaint to add the newly discovered defendant without violating the statute of limitations. (*Id.*) Plaintiffs further argue that they only received the identities of some of the defendants the day before filing the present Motion, as well as information supporting the new claims. (*Id.* at 7.)

**C.   Defendants' Opposition**

In their Opposition, Defendants first argue federal procedural law does not recognize "doe" allegations and that Plaintiffs should not be able to substitute individuals for the "doe" placeholders. (Doc. 46 at 2–3.) Alternatively, Defendants argue that the Federal Rules of Civil Procedure can only "indulge" "doe" defendants when there are specific allegations regarding how each "doe" defendant violated the plaintiff's rights.[2] (*Id.* at 3–5.) Finally, Defendants argue that the statute of limitations bars the addition of new defendants or the substitution of individuals for the "doe" defendants. (*Id.* at 5–7.)

---

[2] The Court notes that, in making this argument, Defendants cite case law directly contradicting their previous argument.

Specifically, Defendants argue that Plaintiffs' claims arise from the decedent's death on January 6, 2021 and the statute of limitations ran, at the very latest, in January 2023. (*Id.* at 6.) Defendants also argue that substituting individuals for the "doe" defendants is barred by the statute of limitations because these substitutions cannot "relate back" to the filing of the original complaint. (*Id.* at 6–7.)

**D.     Plaintiffs' Reply**

In their Reply, Plaintiffs reiterate that their proposed second amended complaint "relates back" to the filing of their original complaint. (Doc. 51 at 9–10.) Plaintiffs also contend that a plaintiff who names "doe" defendants have three years from the commencement of the action in which to discover the identity of "doe" defendants, to amend the complaint, and to effectuate service of the complaint on the newly identified defendants. (*Id.* at 10.) Finally, Plaintiffs argue that their FAC sets out in detail all the facts set forth in the CLERB investigation, the only publicly available document regarding Arroyo's death, including the specific acts or failures of the "doe" defendants. (*Id.* at 10–11.)

**E.     Subsequent Motions**

While the present Motion was pending before this Court, on February 7, 2024, Plaintiffs filed an Ex Parte Motion to Amend the Scheduling Order (Doc. 37) before Magistrate Judge Chu. (Doc. 63.) In this ex parte motion, Plaintiffs request an order from the Court "extending the December 4, 2023 deadline to allow Plaintiffs to file a [t]hird [a]mended [c]omplaint … that corrects certain allegations in the proposed [s]econd [a]mended [c]omplaint … and names two new defendants who were not identified in the SAC …." (*Id.* at 2.) Plaintiffs contend that "[g]ood cause exists to extend the December 4, 2023 deadline to file a TAC that names two new defendants, a Sergeant Cardoza and a Deputy Sherman, because Plaintiffs only became aware of the identities [and claims against] these defendants … on February 7, 2024." Plaintiffs contend that "[t]he County only [identified] Cardoza in January 2024 – well after the December 4th deadline had lapsed" and that "Plaintiffs only became aware of Deputy Sherman today after deposing

8

Sergeant Cardoza." (*Id.*) Defendants, however, contend that Plaintiffs "received documents identifying Sergeant Cardoza and Deputy Sherman nearly seven months ago … on July 14, 2023, and again on August 29, 2023." (Doc. 65 at 3–4.)

On February 22, 2024, Plaintiffs filed a second Ex Parte Motion to Amend the Scheduling Order (Docs. 37, 42) before Magistrate Judge Chu. (Doc. 69.) In this ex parte motion, Plaintiffs again request an order from the Court "extending the December 4, 2023 deadline to allow Plaintiffs to file a [t]hird [a]mended [c]omplaint … that corrects certain allegations in the proposed [s]econd [a]mended [c]omplaint … and names two new defendants who were not identified in the SAC …." (*Id.* at 2.) Defendants again respond that "Plaintiffs received documents identifying [Sergeant Cardoza and Deputy Sherman], more than seven months ago." (Doc. 70 at 3, 5–6.)

Issues pertaining to the parties' scheduling order generally fall within the purview of the Magistrate Judge and are subject to the "good cause" standard set forth in Federal Rule of Civil Procedure 16. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Therefore, the Court will defer all issues pertaining to the scheduling order to Magistrate Judge Chu. However, the Court cautions the parties that, should Magistrate Judge Chu find "good cause" to amend the scheduling order and grant Plaintiffs additional time to request leave to file a third amended complaint under Rule 15, the Court will apply the same liberal standard set forth below. *AmerisourceBergen Corp.*, 465 F.3d at 951 ("Rule 15(a) is very liberal ….") (quotation and citations omitted); *Morongo Band of Mission Indians*, 893 F.2d at 1079 ("[Fed. R. Civ. P. 15(a)'s policy] is to be applied with extreme liberality."); *Stearns*, 763 F. Supp. 2d at 1154 ("Federal Rule of Civil Procedure 15(a) … should be applied with 'extreme liberality.'")

## II.  LEGAL STANDARD

Because Plaintiffs' Motion was filed before the deadline identified in the parties' scheduling order (*see* Docs. 37, 40, 42), Federal Rule of Civil Procedure 15 governs the Court's determination of this Motion. *See Johnson v. Mammoth Recreations, Inc.*, 975

F.2d 604, 607 (9th Cir. 1992). Rule 15 affords the Court broad leeway to grant plaintiffs leave to amend their pleadings before, during, or after trial. *See* Fed. R. Civ. P. 15.

Before trial, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks and citations omitted); *see also Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254 (9th Cir. 1981) ("'[T]he Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) … by freely granting leave to amend when justice so requires.'") (quoting *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend shall be freely given when justice so requires.") (internal quotation marks and citations omitted).

In the Ninth Circuit, "[t]he propriety of a motion for leave to amend is generally determined by reference to several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Hurn*, 648 F.2d at 1254; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that, absent undue delay, bad faith or dilatory motive on the part of the movant, a repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., leave to amend should be freely given). "[T]he consideration of prejudice to the opposing party [] carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.*

"Defendants carry the burden of showing why leave to amend should not be granted." *Stearns*, 763 F. Supp. 2d at 1154 (citing *Genentech, Inc. v. Abbott Lab'ys*, 127

F.R.D. 529, 530–31 (N.D. Cal. 1989) ("[S]ince Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted.")). For the reasons set forth below, Defendants have not met their burden.

### III. DISCUSSION

As stated above, "[t]he propriety of a motion for leave to amend is generally determined by reference to several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party[,]" *Hurn*, 648 F.2d at 1254, and "Defendants carry the burden of showing why leave to amend should not be granted[,]" *Stearns*, 763 F. Supp. 2d at 1154 . Here, Defendants do not explicitly address each factor. Instead, Defendants argue Plaintiffs have not tolled the statute of limitations, there is no federal authority for "doe" allegations, and Plaintiffs do not plead their "doe" allegations with specificity. (Doc. 46 at 2–7.) The Court construes Defendants' arguments as concerning the futility of amendment factor. The Court addresses each of Defendants' arguments as they pertain to futility of amendment, as well as the remaining factors, below.

**A.    Futility of Amendment**

**1.    The Statute of Limitations and the Relation Back Doctrine**

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted); *see also Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011) ("California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983.") (citations omitted); *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (holding California's statute of limitations "for assault, battery, and other personal injury claims" applies to § 1983 claims). In California, "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act

or neglect of another" must be filed within two years. Cal. Civ. Proc. Code § 335.1. Thus, Plaintiffs' 42 U.S.C. § 1983 claims are subject to a two-year statute of limitations.

Federal Rule of Civil Procedure 15(c)(1) states:

An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The 1991 advisory committee notes accompanying this provision state, "the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed. R. Civ. P. 15(c)(1), Advisory Committee Notes, 1991 Amendment. The 1991 advisory committee notes also state, "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *Id.*

"Thus, Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient. As a result, if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would not otherwise relate back under the federal rules." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014). In other words, when "the limitations period

derives from state law, Rule 15(c)(1) requires us to consider both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Id.* at 1201.

Thus, Defendants' argument that "Plaintiff[s] should be required to follow procedures that … would include a showing that Plaintiff[s] met federal standards permitting the untimely addition of newly [] discovered defendants" is incorrect. It is true that "[t]he Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, but Rule 10 does require a plaintiff to include the names of all parties in his complaint." *Keavney v. Cnty. of San Diego*, Case No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020); *see also Carnalla v. Doe*, No. 2:23-cv-01799-EFB (PC), 2023 WL 8261639, at *2 (E.D. Cal. Nov. 29, 2023) ("The Federal Rules of Civil Procedure 'do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit[.]'") However, as stated above, "Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient." *Butler*, 766 F.3d at 1200. The Court now turns to its analysis of California and federal law to determine which provides the more lenient relation-back standard.

### a. California Law

"Amendments of pleadings under California law are generally governed by California Civil Procedure Code [section] 473(a)(1)." *Butler*, 766 F.3d at 1201 (citing *Bd. of Trs. of Leland Stanford Jr. Univ. v. Superior Ct.*, 149 Cal. App. 4th 1154 (2007)). "Section 473(a)(1) does not contain any express provision for relation back of amendments …." *Id.* "Under California Civil Procedure Code [section] 474, however, California courts have recognized that 'where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back.'" *Id.* (quoting *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004)). Specifically, California Code of Civil Procedure section 474 states, "[w]hen the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint … and when his true name is discovered, the pleading or proceeding must be amended accordingly[.]" Cal. Code Civ. Proc. § 474.

"For [section] 474 to apply, however, the plaintiff must be 'genuinely ignorant' of the defendant's identity at the time the original complaint is filed." *Id.* at 1202 (citing *Woo v. Superior Court*, 75 Cal. App. 4th 169, 177 (1999)).

Here, Plaintiffs contend that, at the time they filed their original complaint, they were "genuinely ignorant of the names of the newly discovered defendants and the acts, or failures to act, of these defendants[.]" (Doc. 43 at 7.) Plaintiffs then contend that they only became aware of the identities of some of the new defendants the day before filing the present Motion. (*Id.*) Plaintiffs further contend that the County's internal reports, policies, and procedures were not publicly available to Plaintiffs and, therefore, they did not have access to these records before filing suit and only gained access to such information during discovery for this lawsuit. (*Id.*)

Defendants do not dispute any of these contentions. Instead, Defendants argue that there is no federal authority for "doe" allegations. (Doc. 46 at 2–3.) However, as the Court stated above, "Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient[,]" including California Code Civil Procedure section 474, which specifically permits "doe" allegations. *Butler*, 766 F.3d at 1200; *see also Doe v. Cnty. of Los Angeles*, Case No. 2:20-cv-02748-ODW (PVCx), 2021 WL 5396093, at *4 (C.D. Cal. Nov. 18, 2021) (finding that California's lenient relation-back rules govern the dispute and relating the proposed amendment to the original complaint); *Sandoval v. Budget Rent A Car*, Case No. LACV 20-07069-VAP, 2020 WL 6588738, at *4 (C.D. Cal. Sept. 3, 2020) ("Having considered the relation back doctrine under both federal and state law, the Court applies California Code of Civil Procedure § 474 here instead of Rule 15."); *Shidler v. County of San Bernardino*, Case No. 5:19-cv-00503-AB-SHK, 2020 WL 10224752, at *3 (C.D. Cal. July 28, 2020) (allowing plaintiff to name individuals in place of doe defendants in a § 1983 action); *Klamut v. California Highway Patrol*, Case No. 15-CV-02132-MEJ, 2015 WL 9024479, at *5 (N.D. Cal. Dec. 16, 2015) (finding that California Code of Civil Procedure section 474 is the applicable relation back rule). Thus, the Court finds that, under

California law, Plaintiff is permitted to substitute the newly identified individual defendants for the "doe" defendants without violating the statute of limitations.[3]

### b. Federal Law

"Rule 15(c)(1)(C) provides the federal standard for whether a pleading relates back." *Butler*, 766 F.3d at 1202. "In order for an amended complaint to relate back under Rule 15(c)(1)(C), the following conditions must be met: '(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.'" *Id.* (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). "Additionally, the second and third requirements must have been fulfilled within 120 days after the original complaint is filed, as prescribed by Federal Rule of Civil Procedure 4(m)." *Id.*

Here, Plaintiffs do not argue that they have met the Rule 15(c)(1)(C) relation-back conditions. While it appears that the basic claims against the new defendants arise out of the same incident set forth in the original pleading, Plaintiffs do not indicate that they have given the new defendants notice or that the new defendant must or should have known the action would have been brought against them but not for a mistake concerning their identities. Additionally, far more than 120 days have passed since the original complaint was filed. However, as explained in detail above, California law, which permits the substitution of the newly identified individual defendants for the "doe" defendants, provides the more "lenient" relation-back standard and governs this case. Accordingly, the Court finds that Plaintiffs are permitted to substitute the newly identified individual

---

[3] "Additionally, the Ninth Circuit has held that strict compliance with § 474 is not required when determining if an amendment to a complaint with Doe defendants 'relates back' to the original complaint." *Est. of Ronnie Paul Sandoval v. Cnty. of San Diego*, Case No. 16cv1004-BEN(RBB), 2016 WL 4491598, at *4 (S.D. Cal. Aug. 5, 2016) (citing *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 801 (9th Cir. 1986)).

defendants for the "doe" defendants without violating the statute of limitations. Therefore, amendment would not be futile, and this factor weighs in favor of granting Plaintiffs leave to amend their FAC.

### 2.     Specificity

In federal court, "[a] plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Keavney v. Cnty. of San Diego*, Case No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020); *see also Astorga v. Cnty. of San Diego*, Case No. 3:21-cv-00463-BEN-LL, 2021 WL 2826017, at *2 (S.D. Cal. July 6, 2021) ("[T]he Federal Rules of Civil Procedure do not permit doe defendants unless the plaintiff "makes specific allegations as to how each doe defendant violated the plaintiff's rights."). "Essentially, plaintiffs may proceed with fictious defendants in federal court, but this does not lift the burden of pleading sufficient facts to support claims against them." *Perez v. City of San Diego*, Case No. 3:22-cv-0712-BEN-AGS, 2022 WL 17541025, at *3 (S.D. Cal. Dec. 8, 2022).

"A plaintiff may [then] seek discovery to obtain the names of the Does and later amend his pleading in order to substitute the true names of those defendants, unless it is clear that discovery will not uncover their identities, or that his complaint is subject to dismissal on other grounds." *Keavney*, 2020 WL 4192286, at *4. Further, a plaintiff's failure to plead "doe" allegations with specificity does not prevent a plaintiff from seeking leave to amend his or her complaint to add any additional parties pursuant to Rule 15. *See Astorga*, 2021 WL 2826017, at *2 (dismissing "does 1 through 25" but stating that "[a] [p]laintiff may seek leave to amend the complaint to add any additional parties that Plaintiff may find appropriate to add pursuant to Rule 15 of the Federal Rules of Civil Procedure.").

Defendants argue that Plaintiffs' FAC fails to plead the identities and actions of the "doe" defendants with the required specificity. (Doc. 46 at 3–5.) Defendants contend that Plaintiffs' "FAC vaguely and generally alleges … '['doe' defendants] 6–20 were medical staff and correctional staff … within the San Diego Central Jail who were responsible for

16

3:21-cv-01956-RBM-SBC

[Arroyo]'s screening, assessment, intake, booking, housing …, safety checks, and monitoring …'" and that "'['doe' defendants] 21–40 were supervisors at the San Diego County Sheriff's Department who were responsible for supervising, disciplining, and training subordinate individual defendants …' …." (*Id.* at 4 (citing FAC ¶¶ 17–18).) Defendants concede, however, that Plaintiffs "give descriptions of ['doe' defendants] 1 and 2 as Deputies Brunk and Rembold (deputies that arrested decedent and did not provide medical care) … and … ['doe' defendant] 5 as Deputy McGarvey (a jail staff member and operator of the body scanner that did not identify an anomaly in decedent's scan)." (*Id.* at 4, n.1.)

The Court finds that Plaintiffs' "doe" allegations are sufficiently specific. Plaintiffs sufficiently allege that "doe" defendant 1 and 2 were the San Diego County Sheriff's deputies who arrested Arroyo, that one of them was a sergeant, that they arrested Arroyo even though being under the influence of methamphetamine is not a bookable offense, that they failed to render aid to Arroyo, and that they failed to give truthful or complete information to the booking staff. (FAC ¶¶ 14, 31–32, 181, 193, 196.) Even Defendants concede that Plaintiffs "give descriptions of Does 1 and 2 as Deputies Brunk and Rembold …." (*Id.* at 4, n.1.) Accordingly, the Court finds that Plaintiffs' allegations regarding "doe" defendants 1 and 2 are sufficiently pled and that Plaintiffs may substitute the newly identified individual defendants for "doe" defendants 1 and 2.

Plaintiffs also sufficiently allege that "doe" defendant 5 was the operator of the body scanner who never identified or inquired about the anomalies on Arroyo's body scan even though "doe" defendant 5 was required (1) to make an inquiry upon seeing the anomaly, (2) to ask the detainee to voluntarily turn over the object, (3) to rescan the body to verify all contraband was removed, (4) to place Arroyo on contraband watch, and (5) to monitor him for any adverse reaction. (*Id.* ¶¶ 16, 59, 60, 64, 67, 69, 72, 73, 201, 204–5.) Even Defendants concede that Plaintiffs "give descriptions of … ['doe' defendant] 5 as Deputy McGarvey (a jail staff member and operator of the body scanner that did not identify an anomaly in decedent's scan)." (*Id.* at 4, n.1.) Accordingly, the Court finds that Plaintiffs'

allegations regarding "doe" defendant 5 are sufficiently pled and that Plaintiffs may substitute the newly identified individual defendant for "doe" defendant 5.

Plaintiffs also sufficiently allege that "doe" defendants 6–20 were medical and correctional staff who were responsible for Arroyo's screening, assessment, intake, booking, housing, safety checks, and monitoring. (*See id.* ¶¶ 17, 75–78, 80–81, 213–15.) Plaintiffs sufficiently allege that, despite learning that Arroyo used methamphetamine and may have ingested a bag of drugs, "doe" defendants 6¬20 did not take Arroyo to the hospital and failed to ensure Arroyo received prompt medical attention and care while he was in jail. (*Id.*) Plaintiffs have now identified Geo Kakkar and Edward Wilt as "doe" defendants 6 and 7. (Doc. 51 at 5, n.1.) Accordingly, the Court finds that Plaintiffs' allegations regarding "doe" defendants 6–20 are sufficiently pled and that Plaintiffs may substitute individual defendants for "doe" defendants 6–20.

Finally, Plaintiffs sufficiently allege "doe" defendants 21–40 were supervisors at the San Diego County Sheriff's Department who were responsible for supervising, disciplining, and training subordinates and that they failed to implement policy, training, or protocols on how to book, monitor, and care for detainees at risk of dying from overdose or withdrawal. (*Id.* ¶¶ 18, 110, 113, 143.) Plaintiffs have now identified Mirelle Chateigne, Derek Williamson, Gino Matrone, Kevin Kamoss, and Joshua Westphal as "doe" defendants 21–25. (Doc. 51 at 5, n.1.) Accordingly, the Court finds that Plaintiffs' allegations regarding "doe" defendants 21–40 are sufficiently pled and that Plaintiffs may substitute individual defendants for "doe" defendants 21–40.

Based on the foregoing, the Court finds that Plaintiffs may amend their FAC to substitute the newly identified individual defendants for their respective "doe" defendants. Thus, the first factor—futility of amendment—weighs in favor of granting Plaintiffs leave to amend their FAC.

**B.     Prejudice, Undue Delay, and Bad Faith**

In addressing the remaining factors, Plaintiffs argue that they have not acted in bad faith or with undue delay because (1) discovery has just started in this case, (2) they sought

leave to file a second amended complaint by the deadline set forth in the scheduling order, (3) the final pre-trial conference is not scheduled until November 14, 2024, (4) the trial date has not been set, and (5) Plaintiffs only discovered the identities and wrongful conduct of the "doe" defendants through recent written discovery. (Doc. 43 at 4–6.) Specifically, Plaintiffs argue that they did not receive the documents they needed to draft a second amended complaint until October 31, 2023. (Doc. 51 at 4–5.) Plaintiffs also assert that the newly identified "doe" defendants will not be prejudiced because their interests overlap with, and they will be represented by the same counsel as, the existing municipal defendants. (Doc. 43 at 5.) Defendants do not respond to any of Plaintiffs' arguments.

The Court finds that Plaintiffs have acted swiftly and in good faith in seeking leave to amend their FAC and that Defendants, including the newly identified "doe" defendants, will not be prejudiced by the filing of the proposed second amended complaint. As stated above, "the consideration of prejudice to the opposing party [] carries the greatest weight," *Eminence Cap., LLC*, 316 F.3d at 1052, and "Defendants carry the burden of showing why leave to amend should not be granted[,]" *Stearns*, 763 F. Supp. 2d at 1154. Plaintiffs have proffered several reasons why Defendants will not be prejudiced by amendment, e.g., that the final pre-trial conference is not scheduled until November 14, 2024, that the trial date has not been set, and that the newly identified "doe" defendants' interests overlap with the existing municipal defendants. The Court is persuaded by these arguments and notes that Defendants, in failing to respond Plaintiffs' arguments, have not met their burden to demonstrate prejudice, undue delay, or bad faith. Accordingly, the Court finds that the three remaining factors—prejudice, undue delay, and bad faith—weigh in favor of Plaintiffs and **GRANTS** Plaintiffs leave to file a second amended complaint.

///
///
///
///
///

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion is **GRANTED**. Plaintiffs shall file their second amended complaint on or before **Tuesday, April 23, 2024**.

**IT IS SO ORDERED.**

DATE:  April 15, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE