**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE ESTATE OF OMAR MORENO ARROYO, by and through its successor-in-interest Tammy Wilson, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:21-cv-01956-RBM-SBC<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART JOINT MOTION TO STRIKE AND SEAL CIRB-RELATED DOCUMENTS [Doc. 255]**<br><br>**(2) GRANTING MOTIONS FOR ADDITIONAL PAGES AND FOR LEAVE TO FILE PHYSICAL EXHIBITS [Docs. 259, 260, 275, 284]**<br><br>**(3) DENYING DEFENDANTS' MOTION TO STRIKE PORTIONS OF THIRD AMENDED COMPLAINT [Doc. 268]**<br><br>**(4) GRANTING JOINT MOTION TO STRIKE AND REFILE THIRD AMENDED COMPLAINT [Doc. 261]**<br><br>**(5) GRANTING PLAINTIFFS' MOTION TO FILE SUR-REPLY [Doc. 292]** |

## I. INTRODUCTION

Pending before the Court are eight motions concerning case management and the Parties' briefing on their motions for summary judgment: (1) Joint Motion to Strike and Seal CIRB-Related Documents (Doc. 255); (2) Joint Motion for an Order Allowing the Parties Additional Pages for their Briefing on their Forthcoming Summary Judgment Motions (Doc. 259); (3) Joint Motion for Order Permitting Lodgment of Video and Audio Evidence in Support of the Parties' Summary Judgment Motions (Doc. 260); (4) Joint Motion to Strike Plaintiffs' Revised Third Amended Complaint in its Entirety and for Leave to Refile (Doc. 261); (5) Defendants' Motion to Strike Portions of Plaintiffs' Third Amended Complaint (Doc. 268); (6) Plaintiffs' *Ex Parte* Motion for Order Permitting Lodgment of Audio and Video Exhibits in Support of Omnibus Opposition to Motions for Summary Judgment (Doc. 275); (7) Plaintiffs' *Ex Parte* Motion for Order Permitting Lodgment of Audio and Video Exhibits in Support of Reply to Defendants' Opposition to Motion for Partial Summary Judgment (Doc. 284); and (8) Plaintiffs' Unopposed *Ex Parte* Motion for Leave to File Sur-Reply to the County of San Diego's Evidentiary Objections and Motion to Strike Evidence Offered by Plaintiffs in Support of Plaintiffs' Omnibus Opposition to Motions for Summary Judgment. (Doc. 292.)

The Court resolves these motions as set forth below.

## II. DISCUSSION

**A.  Joint Motion to Strike and Seal CIRB-Related Documents (Doc. 255)**

Defendants previously moved to strike or seal certain documents containing information from the County of San Diego's Critical Incident Review Board ("CIRB") in light of the Ninth Circuit's ruling in *Greer v. County of San Diego*, 127 F.4th 1216 (9th Cir. 2025). (Doc. 235.) The Court granted in part and denied in part that motion, finding some of Defendants' requests were "not specific enough to warrant a ruling." (Doc. 254 at 4–5.) The Court authorized "a renewed motion to seal or strike certain filings, or portions thereof," that provided further detail about the documents sought to be stricken or sealed. (*Id.* at 5.) Per the Court's order, the Parties filed a Joint Motion to Strike and

Seal CIRB-Related Documents ("Joint Motion to Strike and Seal") providing further detail on thirteen documents they seek to strike and requesting "leave to re-file [those] documents with all CIRB references removed, and with no other changes." (Doc. 255 at 2.)

As Magistrate Judge Steve B. Chu already ruled:

> The Court finds that the el[e]ven CIRB reports and accompanying spreadsheet at issue here are protected by the attorney-client privilege. Although Plaintiffs argue that *Greer* applies only to the specific CIRB reports in that case, the Ninth Circuit's analysis was not limited to the factual nuances of a single CIRB report or document. Instead, the Ninth Circuit engaged in a broader examination of the CIRB's structure, purpose, and function. The decision addressed the CIRB process itself, and concluded that the primary purpose of the CIRB is to assess legal liability and avoid future liability. Since the CIRB's purpose does not vary on a case-by-case basis, and CIRB reports are generated with the same objectives guiding their creation, the analysis in *Greer* logically extends to other CIRB reports and related documents prepared under the same framework.

(Doc. 253 at 6–7.)

The Parties correctly note that each of the documents they seek to strike, except one, contains privileged CIRB material. However, Plaintiffs' Motion to Not File Under Seal (Doc. 107) does not contain any such material. Having reviewed the Joint Motion to Strike and Seal, the filings identified therein, and the operative Third Amended Complaint ("TAC") (Doc. 256), the Court **GRANTS** the Joint Motion to Strike and **DIRECTS** the Clerk of the Court to strike the following documents from the public docket:

1. Plaintiffs' Motions for Leave to File TAC (Docs. 104, 109)

2. Motion to Exclude Opinion Testimony by Plaintiffs' Expert Gary Raney (Doc. 148)

3. Plaintiffs' Motion to Not File Under Seal (Doc. 149)

4. Plaintiffs' Pre-trial Disclosures (Doc. 159)

5. Plaintiffs' Memorandum of Contentions of Fact and Law (Doc. 160)

6. Plaintiffs' Motion for Discovery Sanctions (Doc. 179)

7. Plaintiffs' Opposition to Motion to Exclude Expert Opinions of Plaintiffs' Expert Roger Clark (Doc. 183)

8. Plaintiffs' Motion to Not File Under Seal (Doc. 185)

9. Proposed Final Pre-trial Conference Orders (Docs. 193, 195)

10. Joint Statement of Undisputed and Disputed Facts re: motions for Summary Judgment (Doc. 215)

The Parties shall refile the above documents with all CIRB references removed, **and with no other changes**, on or before **October 29, 2025 at 4:30 p.m.**

Additionally, the Parties "further request the sealing of the current expert reports of Gary Raney and Roger Clark" and portions of specific depositions, "all of which contain confidential CIRB information." (Doc. 255 at 3.) The Parties identify those portions as "Deposition of James Parent, p. 27-34 and Ex. 32" and "Deposition of Gary Raney, p. 62:23–63:21, 78:12–79:23, 118:22–120:2, 127:5–14." (*Id.*) Plaintiffs request leave to re-serve the expert reports "with all CIRB references removed, and with no new substantive opinions. The County Defendants request leave to serve supplemental reports in response, if needed." (*Id.*)

The Parties do not indicate to which documents those page numbers, deposition pin cites, and exhibit number refer. Although it "is not the Court's responsibility to identify the privileged CIRB documents and information in the public docket to be sealed or stricken," (Doc. 254 at 5), the Court nonetheless reviewed Docs. 262, 264, 266, and 271 and cannot discern what documents the Parties request be sealed. Those filings attach as exhibits, or contain references to, the expert reports of Gary Raney and Roger Clark or the depositions of James Parent and Gary Raney. But those filings do not align with the page numbers provided by the Parties. (*See, e.g.*, Doc. 264-5 at 3–35 (excerpts of September 4, 2025 deposition of Gary Raney not including pages 62, 63, 78, 79, 118–120, or 127); Doc.

266-37 at 2–8 (same); Doc. 271-8 at 2–25 (excerpts of May 8, 2024 deposition of James Parent not including pages 27–34); Doc. 266-19 at 2–13) (same)).  Accordingly, the Court **DENIES** these requests to seal and Plaintiffs' related request to re-serve the expert reports of Gary Raney and Roger Clark.  The Parties may file a renewed motion to seal certain filings, or portions thereof, that identifies the filings by document number on or before **November 5, 2025 at 4:30 p.m.**

**B.    Joint Motion for Additional Pages (Doc. 259)**

In this District, leave of court is required to file any moving or opposing brief longer than 25 pages, and any reply brief longer than 10 pages.  S.D. Cal. Civ. R. 7.1(h).  The Parties jointly move ("Joint Motion for Additional Pages") for an order authorizing:

> The Individual County Defendants' moving papers may not exceed 50 pages in length; [t]he County's moving papers may not exceed 25 pages in length; Plaintiffs' omnibus opposition to all County Defendants' motion may not exceed 75 pages in length; [t]he County Defendants' omnibus reply papers may not exceed 27 pages in length; [Plaintiffs'] moving papers may not exceed 50 pages in length; [t]he County's opposition may not exceed 50 pages in length; and Plaintiff's reply may not exceed 15 pages in length.

(Doc. 259 at 3.)

The Parties represent these increased page limits are appropriate because there are numerous Defendants; several causes of action alleged against each Defendant; and an individualized qualified immunity analysis required for each Defendant.  (*Id.* at 2–3.)  Good cause appearing, the Joint Motion for Additional Pages is **GRANTED**.  The Parties may, and already appear to, exceed page limits in line with their proposal above.  (*See* Doc. 267-1 (individual Defendants' motion for summary judgment is 50 pages); Doc. 271-1 (Plaintiffs' motion for summary judgment is 50 pages); Doc. 278 (Plaintiffs' omnibus opposition is 74 pages)).

**C.    Motions to Lodge Video and Audio Evidence (Docs. 260, 275, 284)**

The Parties jointly move "for an Order permitting the lodgment of video and audio evidence in support of their respective motions for summary judgment that cannot be e-

filed through the Court's CM/ECF system." ("Joint Motion to Lodge Video and Audio Evidence") (Doc. 260 at 2.) Defendants request to file five audio recordings or video clips (labeled Exhibits B, H, V, FF, and NN), and Plaintiffs request to file three video clips (labeled Exhibits 8, 9, and 10). (*Id.*)

Plaintiffs also move *ex parte* for orders permitting the lodgment of exhibits "in support of Plaintiffs' omnibus opposition to defendants' motion for summary judgment," (Doc. 275 at 2) and "in support of Plaintiffs' reply to Defendants' opposition to Plaintiffs' motion for partial summary judgment." (Doc. 284 at 2) (together, the "*ex parte* motions"). Plaintiffs' request covers 11 audio recordings or video clips corresponding to Bates Nos. CSD-000605; CSD-000601; CSD-000608; CSD-000064; CSD-000043; CSD-000044; CSD-000045; CSD-000061; CSD-000066; and "Defendants' Trial Exhibit 'BK1'" and "Defendants' Trial Exhibit 'BK2.'"

The Joint Motion to Lodge Video and Audio Evidence (Doc. 260) and the *ex parte* motions (Docs. 275, 284) are **GRANTED**. The Parties may lodge the listed audio and video evidence. The Court notes that Defendants already lodged the five exhibits indicated in the Joint Motion, and therefore need not refile them. The Court also notes that Plaintiffs already lodged the files corresponding to Bates Nos. CSD-000061 and CSD-000064, and therefore need not refile them. Plaintiffs shall lodge their remaining exhibits with the Clerk's Office on or before **October 29, 2025 at 4:30 p.m.**

D.   **Defendants' Motion to Strike Third Amended Complaint (Doc. 268)**

Defendants move to strike paragraphs 64, 85–88, 386–387, 419, and 440 from the revised TAC ("Motion to Strike") (Doc. 268 at 2.) Defendants claim these paragraphs represent four new theories not previously alleged in the original Third Amended Complaint ("original TAC")[1]. (*Id.* at 2–6.)

---

[1] The Original TAC was filed at Doc. 121 but was stricken per Court order. (Doc. 254.) Excerpts of the Original TAC are provided at Doc. 274-1.

Defendants argue that these paragraphs must be stricken because: (1) the new theories are futile; (2) Defendants will be unduly prejudiced if the new theories are allowed; and (3) Plaintiffs did not request leave of court to add the new theories. (*Id.*) Plaintiffs argue that a motion to strike is not the proper avenue to challenge the sufficiency of Plaintiffs' allegations and the original TAC's allegations put Defendants on sufficient notice of the "new theories." (Doc. 274 at 4–16.) Plaintiffs do not meaningfully respond to Defendants' argument that the TAC was filed without leave of court; Plaintiffs state only that the TAC "was filed as corrected per the Court's order on June 17, 2025." (*Id.* at 4 (citing Doc. 256).)

Although Plaintiffs' decision to revise several of the TAC's allegations without first moving for leave to amend may be "considered a procedural misstep," the allegations are not "redundant, impertinent, immaterial, or scandalous" as required for the Court to exercise its discretion to strike a pleading. *Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1144 (S.D. Cal. 2018) (quoting Fed. R. Civ. P. 12(f)). Because the original TAC's allegations put Defendants on sufficient notice, and because the TAC's revised allegations do not add new legal theories, Defendants' Motion to Strike is **DENIED**.

### 1. Legal Standard

The Court has broad discretion in deciding whether to strike a pleading that contains "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). Matters are "immaterial" if they have "no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" if they "do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (*reversed on other grounds*, 510 U.S. 517 (1994) (citation omitted)). Matters are "scandalous" if they "cast a cruelly derogatory light on a party or other persons." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice, *RDF Media*

*Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005), and the Court will not exercise its discretion under Rule 12(f) to strike a pleading "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). "Where allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken." *Id.*

### 2. Discussion

#### a. Futility

Defendants argue that the revised allegations at issue should be stricken because they are futile. (Doc. 268-1 at 5–6.) As Plaintiffs note, "such merits arguments are not appropriate on a motion to strike." *Reiffer v. HGM Holdings LLC*, 1:18-cv-1058-LJO-BAM, 2019 WL 1455325, at *3 (E.D. Cal. Apr. 2, 2019). "[A]bsent a showing of the supposedly offending allegations' irrelevance to the subject matter of the lawsuit or a possibility of harm to a party . . . the motion to strike under Rule 12(f) should be denied and the sufficiency of the allegations left for . . . adjudication by summary judgment. . . ." *Gibbens v. Quick Collect, Inc.*, Cause No. C21-1643RSL, 2022 WL 168507, at *1 (W.D. Wash. Jan. 18, 2022) (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed.)). The Court finds that Defendants' futility arguments are similarly unavailing on a motion to strike.

#### b. Notice

Defendants argue that the TAC raises new theories after the close of discovery, and that Defendants will be unduly prejudiced if the revised allegations are not stricken. (Doc. 268-1 at 3–5; Doc. 282 at 2–5.) Defendants claim that the following four theories in the TAC were not previously pled:

> (1) The existence of probable cause to arrest [Arroyo] and thus whether [Arroyo] was being falsely imprisoned when he died; (2) whether the County's policies condone false arrest/imprisonment; (3) whether the structural status of the holding cell was such that it created "blind spots;" and (4) whether people charged with violating

>     Penal Code § 647(f) (under the influence) should not be held in the
>     Book and Release Cells.

(Doc. 268-1 at 2) (citations omitted).

Plaintiffs argue the original TAC properly alleged that the "continued jail detention of [Arroyo] was unlawful after [Defendant Rembold] filed a fake charge; that the County's policy condoned such false imprisonment; and that the placement of [Arroyo], who was alleged to be unable to care for his own welfare, in a cell with inadequate monitoring violated the law." (Doc. 274 at 5.) The Court agrees with Plaintiffs that "[u]nder the liberal federal pleading rules," the original TAC's allegations provided the required "notice and clarity of claims." *LeDuc*, 814 F. Supp. at 830.

As to the first two of the four allegedly new theories, the original TAC sufficiently alleged "liability for [Arroyo's] illegal detention in jail on a false charge and that the County's policies condoned this action." (Doc. 274 at 6.) The following allegations from the original TAC, "when read with the complaint as a whole, give a full understanding thereof," and therefore "need not be stricken." *LeDuc*, 814 F. Supp. at 830.

>     While [Arroyo] was in the booking process, [Defendant] Rembold was told by [Defendant Anderson] that there was no basis to further hold [Arroyo] because the charges against him for violating Penal Code § 647(f) required that [Arroyo] be intoxicated in public. . . . [Defendant] Rembold knew that there was no basis to hold [Arroyo].

(Doc. 274-1 at 4.)

>     [Arroyo] fit into none of the three [Emergency Booking Acceptance] criteria, thus defendants had no legal authority to arrest and book [Arroyo]. . . . Defendants knew that they could not book [Arroyo] into jail. . . . Deputies at the Jail, once told that there was no bookable offence, had the option to immediately release [Arroyo] so that he could receive medical care.

(*Id.* ¶¶ 54, 55, 60.)

>     These deputies either ignored the law or they were not properly trained by the Sheriff's Department. There was either a failure of policy or failure to train that once it was established that there was

>no basis to hold someone in jail that the detainee should be released. . . . The policy on continuing to book inmates for non-bookable offence was grossly deficient.

(*Id.* ¶¶ 61, 427.)

Although no allegation in the original TAC expressly used the terms "false imprisonment" or "false arrest" or otherwise stated that [Arroyo] was arrested without probable cause, the allegations above fairly pled that Arroyo was arrested on a wrongful charge, and that policies in place (or not in place) at the county jail played a role in his arrest.

The third allegedly new theory similarly was adequately pled in the original TAC. Defendants argue that "Plaintiffs allege for the first time in their [TAC] that there existed 'blind spots' in [Arroyo's] holding cell of which the County and [Defendant Kamoss] should have been aware." (Doc. 268-1 at 5–6.) The term "blind spot" did not appear in the original TAC. But the original TAC contained multiple allegations that Defendants failed to perform adequate safety checks: "[Defendant] Gore, [Defendant] Kamoss and [Defendant] Cardoza knew that their deputies were not conducting proper cell checks and that they had been doing "fly bys" in which deputies fail to actually check on the welfare of the inmates" (Doc. 274-1 ¶ 404); "[t]his included repeated failures by deputies to conduct proper cell checks which were made known to defendants by multiple sources" (*id.* ¶ 415); "[t]here was a *de facto* custom of failing to conduct proper cell checks or monitoring, as required by the County's own written policies" (*id.* ¶ 441); "[t]here was no policy on supervisors conducting random audits of safety checks. There is no policy that supervisors review videos of cell checks" (*id.* ¶ 443); "[t]here was no formal process for periodic monitoring of deputies conducting safety checks" (*id.* ¶ 444); "[Defendants] Kamoss and Cardoza . . . failed to take any action to either monitor the cells from the control tower by watching the live video feed or to send other deputies to the book and release cells." (*Id.* ¶ 471.) Considering these allegations, the Court finds Defendants were

on fair notice that the alleged inadequacy of the safety checks could have included obstacles, such as blind spots, to the deputies' abilities to sufficiently monitor inmates.

The fourth allegedly new theory—that people charged with violating Penal Code § 647(f) should not be held in the Book and Release cells—was also adequately pled in the original TAC. (*See id.* at 4 ("Rather, they placed Omar under a 'book and release' status. Jail authorities placed Omar in a holding cell and subsequently failed to monitor his condition."); *id.* ¶¶ 88, 90 ("Had Omar been rejected for booking, he would have received critical medical attention at a hospital. . . . On the third floor of the Central Jail, safety checks are conducted every 30 minutes. Medical Observation Bed (MOB) would have resulted in a closer monitoring of Omar by the medical staff. Placement in the sobering cell would have resulted in a closer monitoring of Omar."); *id.* ¶ 110 ("The Sheriff's Department's policy requires jail staff to place individuals under the influence of drugs and/or alcohol . . . in Sobering Cells so they can be closely monitored by medical personnel at regular time intervals in a protective environment."); *id.* ¶ 111 ("Rather than placing him in a sobering cell or medical observation bed, jail authorities placed Omar in a book and release cell and subsequently failed to monitor his condition."); *id.* ¶ 211 ("Jail staff frequently designated acutely intoxicated arrestees as 'book and release' inmates . . . . 'Book and release' inmates were routinely denied more extensive, second-stage medical screening where they could be seen by a doctor.").) Thus, Defendants were on notice of the alleged impropriety of placing individuals who were under the influence in Book and Release cells.

### c. Leave to Amend

Finally, Defendants argue that Plaintiffs' revised allegations are improper because the Court previously ordered Plaintiffs only to refile the TAC without information derived from the CIRB reports. (Doc. 268-1 at 2 (citing Doc. 254 at 4) (ordering Plaintiffs to "file a revised TAC that complies with Magistrate Judge Chu's ruling on [Defendants'] Motion for Reconsideration. . . . Any revised TAC may not include information derived *solely* from privileged CIRB material.").) Plaintiffs likely could have avoided this motion and

the time and expense of litigating it by first moving for leave to amend any allegations not linked to the CIRB reports. However, because Plaintiffs did not disobey the Court's previous order, and because Defendants were on notice of everything covered in the revised allegations, the Court will not strike the disputed paragraphs.

Courts have stricken claims that exceed the scope of an order allowing leave to amend. In *Lizza v. Deutsche Bank National Trust Co.*, for example, the Ninth Circuit affirmed the district court's order striking the plaintiffs' second amended complaint for "exceeding the scope of amendment permitted in the court's first dismissal order." 714 F. App'x 620, 622 (9th Cir. 2017). The Ninth Circuit reasoned that, "[f]airly read, the district court's order allowed the [plaintiffs] to make more specific the UDAP claims they asserted in their First Amended Complaint . . . , not to assert a wholly new theory of liability." *Id.; see also Vaughn v. Cohen*, Case No. 3:23-cv-06142-TMC, 2024 WL 4881975, at * (W.D. Wash. Nov. 25, 2024) ("The Court's order limited the scope of amendment on correcting the remedy sought, and if the Estate wanted to bring these claims, it should have requested leave of the Court to amend the pleadings to add new claims."); *Vyas v. Vyas*, CV 15-02152 RSWL (DFMx), 2017 WL 6551110, at *7 (C.D. Cal. May 8, 2017) ("Plaintiff was only granted leave to amend and file a SAC as to Defendant Chambers. . . . Therefore, any additions made as to Defendant Vyas in regards to legal theories and factual allegations will be stricken.").

In contrast, courts have denied motions to strike where the amending party was "granted leave to amend without limitation." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010); *see Nissou-Rabban*, 285 F. Supp. 3d 1136, 1144 (denying motion to strike where the court order "allowed amendment of Plaintiff's First Amended Complaint within thirty days, and included no other limiting language").

Here, the Court previously ordered that the TAC "may not include information derived solely from privileged CIRB materials" and included no other limiting language. (Doc. 254 at 4.) Except for paragraph 269, which is the subject of the Parties' joint motion

1  to strike (Doc. 261) discussed below, Plaintiffs complied with that requirement when they
2  filed the TAC.  Plaintiffs did not disobey the Court's order, Defendants are not prejudiced
3  by inclusion of the revised allegations in the TAC, and the revised allegations are not
4  "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).  Moreover, the
5  Federal Rules of Civil Procedure "should be construed and administered to secure the just,
6  speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.
7  The Parties' cross motions for summary judgment, and the merits of the four allegedly new
8  theories, are currently pending before the Court.  Striking the identified allegations from
9  the TAC "would certainly not make the determination of this action more speedy or
10 inexpensive," and in light of the Court's findings as to notice, "it would likely not make it
11 more just either." *Axon Solutions, Inc. v. San Diego Data Processing Corp.*, CASE NO.
12 09 CV 2543 JM (RBB), 2010 WL 11509163, at *3 (S. D. Cal. June 24, 2010).  Accordingly,
13 Defendants' Motion to Strike (Doc. 268) is **DENIED**.

14 **E.    Joint Motion to Strike and Refile TAC (Doc. 261)**

15       The parties jointly move to strike the TAC (Doc. 256) and re-file it "with the only
16 change being the deletion of paragraph 269." (Doc. 261 at 2.)  The parties represent that
17 paragraph 269 "inadvertently contained information obtained from a Critical Incident
18 Review Board report." (*Id.*)

19       As previously discussed[2], the Court has broad discretion in deciding whether to
20 strike a pleading that contains "any redundant, immaterial, impertinent, or scandalous
21 matter." Fed. R. Civ. P. 12(f); *see Nurse*, 226 F.3d at 1000.  The Joint Motion (Doc. 261)
22 is **GRANTED**.  Plaintiffs shall refile the TAC.  To maintain the accuracy of any pin cites
23 to the TAC in the multiple substantive motions pending before the Court (*see* Docs. 262–
24 264, 266–267, 271), the refiled TAC must be identical to Doc. 256, except that the
25 allegations in paragraph 269 shall be deleted and replaced with the text "Stricken per Court

---

28  [2]  (*See supra* II.D.1)

order." The Court therefore **DIRECTS** the Clerk of the Court to strike Doc. 256 from the public docket. Plaintiffs shall refile the TAC on or before **October 29, 2025 at 4:30 p.m.**

### F.     Sur-Reply to the County of San Diego's Evidentiary Objections and Motion to Strike Evidence (Doc. 292)

Plaintiffs move unopposed for leave to file a sur-reply to respond to evidentiary objections Defendants raised in their reply (Doc. 283-8) to Plaintiffs' opposition (Doc. 278) to Defendants' motions (Docs. 266, 267) for summary judgment. (Doc. 292.) The unopposed motion is **GRANTED**.

"Although the Court may in its discretion allow the filing of a sur-reply, this discretion should be exercised in favor of allowing a sur-reply only where a valid reason for such additional briefing exists." *Johnson v. Wennes*, Civil No. 08cv1798-L(JMA), 2009 WL 1161620, at *2 (S.D. Cal. Apr. 28, 2009). Plaintiffs argue that a valid reason exists because they need an opportunity to respond to Defendants' nearly seven dozen evidentiary objections and motion to strike evidence. (Doc. 292 at 2.)

The Court notes that "while a court will consider a party's evidentiary objections to a motion for summary judgment, '[o]bjections such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself.'" *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1228 (S.D. Cal. 2023) (quoting *All Star Seed v. Nationwide Agribusiness Ins. Co.*, Civil No. 12cv146 L(BLM), 2014 WL 1286561, at *16 (S.D. Cal. Mar. 31, 2014)). Still, the Court finds it appropriate for Plaintiffs to file a sur-reply to respond to Defendants' evidentiary objections. Plaintiffs shall file the pleading on or before **October 29, 2025 at 4:30 p.m.**

### III.     CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Joint Motion to Strike and Seal CIRB-Related Documents (Doc. 255) is **GRANTED IN PART AND DENIED IN PART**. The Court **DIRECTS** the Clerk of the Court to strike Docs. 104, 109, 148, 149, 159, 160, 179, 183, 185, 193, 195, and 215 from the public docket. The Parties shall refile the stricken documents on

or before **October 29, 2025 at 4:30 p.m.**  The Parties may file a renewed motion on or before **November 5, 2025 at 4:30 p.m.**

2. The Joint Motion for an Order Allowing the Parties Additional Pages for their Briefing (Doc. 259) is **GRANTED**.

3. The Motions for Leave to Lodge Audio and Video Exhibits (Docs. 260, 275, 284) are **GRANTED**.  Plaintiffs shall lodge their remaining exhibits with the Clerk's Office on or before **October 29, 2025 at 4:30 p.m.**

4. Defendants' Motion to Strike Portions of Plaintiffs' Third Amended Complaint (Doc. 268) is **DENIED**.

5. The Joint Motion to Strike Plaintiffs' Revised Third Amended Complaint and for Leave to Refile (Doc. 261) is **GRANTED**.  The Court **DIRECTS** the Clerk of the Court to strike Doc. 256 from the public docket.  Plaintiffs shall refile the Third Amended Complaint consistent with the terms of this Order on or before **October 29, 2025 at 4:30 p.m.**

6. Plaintiffs' Motion for Leave to File Sur-Reply (Doc. 292) is **GRANTED**.  Plaintiffs shall file the sur-reply on or before **October 29, 2025 at 4:30 p.m.**

**IT IS SO ORDERED.**

Dated: October 21, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE