**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE ESTATE OF OMAR MORENO ARROYO, by and through its successor-in-interest Tammy Wilson, et al.,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:21-cv-01956-RBM-SBC<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY DEFENDANTS' INTERLOCUTORY APPEAL AS FRIVOLOUS**<br><br>**[Doc. 322]** |

This case concerns the in-custody death of 33-year-old Omar Moreno Arroyo ("Moreno"). San Diego County Sheriff's Department ("SDCSD") deputies responded to a 911 call made by Moreno's wife indicating that Moreno may have been under the influence of drugs because he was acting paranoid and hallucinating. After arriving at Moreno's residence and determining he was under the influence of drugs, deputies arrested Moreno and transferred him to jail, where he received a medical screening and was placed in a book and release cell. The same night he was arrested, about an hour after his last safety check and an hour before his next one, Moreno removed his face mask, appeared to put something in his mouth, collapsed onto the floor, and exhibited seizure-like activity.

Deputies later noticed Moreno's body on the floor of his cell in an unnatural position.

Deputies and nurses' attempts to take emergency life-saving measures were unsuccessful and Moreno was pronounced dead; his cause of death was choking with a contributing factor of acute methamphetamine intoxication. A more complete recitation of the background of this case may be found in the Court's March 24, 2026 Order granting in part and denying in part the Parties' cross motions for summary judgment ("Summary Judgment Order"). (*See* Doc. 314 at 2–8.)

Moreno's wife and successor-in-interest filed the instant lawsuit alleging 42 U.S.C. § 1983 violations against several SDCSD employees, municipal liability against the County of San Diego, and state law claims against all Defendants. On March 24, 2026, the Court issued the Summary Judgment Order. (Doc. 314.) On April 23, 2026, Defendants appealed the Summary Judgment Order to the extent that the Court denied five of the individual Defendants' requests for qualified immunity. (Doc. 316.)

Plaintiffs then filed the instant Motion to Certify Defendants' Interlocutory Appeal as Frivolous ("Motion to Certify"). (Doc. 322.) Defendants filed an Opposition (Doc. 329) and Plaintiffs filed a Reply (Doc. 330). The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having reviewed these filings, and for the reasons below, the Court **DENIES** the Motion the Certify.

## I. LEGAL STANDARD

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Where "the interlocutory claim is immediately appealable, its filing divests the district court of jurisdiction to proceed with trial." *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). However, with respect to an interlocutory appeal on the issue of qualified immunity, "[s]hould the district court find that the defendants' claim of qualified immunity is frivolous or has been waived, the district court may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial." *Id.*

"An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit." *In re George*, 322 F.3d 586, 588 (9th Cir. 2003) (citation omitted). "District courts have certified appeals of qualified immunity as frivolous where (1) defendants claim to rely on, but do not actually rely on, the plaintiff's version of the facts, or (2) where defendants' legal arguments run afoul of clearly established law." *Henderson v. City of Torrance*, Case No. CV 18-3918-MWF (EX), 2021 WL 3185479, at *3 (C.D. Cal. Apr. 5, 2021). Thus, to determine whether Defendants' appeal is frivolous, the Court must examine whether there is any merit to their qualified immunity argument under Plaintiffs' version of the facts. In so doing, the Court is mindful that its "power [to certify an appeal as frivolous] must be used with restraint." *J.P. by and through Villanueva v. Cnty. of Alameda*, Case No. 17-cv-05679-YGR, 2018 WL 3845890, at *2 (N.D. Cal. Aug. 13, 2018) (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)).

## II. DISCUSSION

Plaintiffs argue that Defendants' appeal is frivolous because it relies on disputed facts and misstates the law regarding qualified immunity. (*See generally* Docs. 322, 330.) Defendants argue that their appeal is not frivolous because there is no clear precedent that would have put the SDCSD officers on notice that their actions or omissions were unconstitutional. (*See generally* Doc. 329.) At least as their appeal concerns Deputies Anderson and Rembold, Defendants seem to accept Plaintiffs' version of the facts and argue that the right was not clearly established. (*Id.* at 11–17.) Because there is a non-frivolous basis for Defendants' appeal, the Court denies Plaintiffs' Motion to Certify.

### A. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation modified). Qualified immunity shields an officer from liability even if his or her action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citation modified).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A right is "clearly established" when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[C]learly established law should not be defined at a high level of generality." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Rather, it "must be 'particularized' to the facts of the case." *Id.* (internal citation omitted). At the same time, "[i]t is not necessary to have a case involving a heart attack, a case involving appendicitis, or a case involving a bowel obstruction for a § 1983 claim based on one of those conditions to survive qualified immunity." *Russell v. Lumitap*, 31 F.4th 729, 737–38 (9th Cir. 2022). The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust consensus of cases of persuasive authority." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified).

**B. Deputies Anderson and Rembold**

The Fourth Amendment guarantees the right to objectively reasonable post-arrest medical care. *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006). Thus, "police officers must 'seek the necessary medical attention for a detainee when he or she has been injured while bring apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'" *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 769 (9th Cir. 2025) (quoting *Tatum*, 441 F.3d at 1099). In the Summary Judgment Order, the Court ruled that "a jury could find that Moreno presented with a substantial risk of serious harm and that [Anderson and Rembold] did not promptly summon [ ] the necessary medical help or . . . tak[e] the injured [Moreno]

to a hospital in an objectively reasonable manner." (Doc. 314 at 16–17 (citation modified).) The Court also found that "Moreno's right to objectively reasonable post-arrest care was clearly established at the time of the incident." (*Id.* at 20 (citing *D'Braunstein*, 131 F.4th at 771–774).)

Defendants note "[t]he undisputed facts, as relied on by this Court, are as follows:"

- The Sheriff's dispatch relayed to these officers that Moreno was potentially under the influence of drugs, acting paranoid, saying that people were inside his house, and running around with a drill putting holes in the wall. . . .
- The call was categorized as a "5150-PSYCH. . . ."
- When Brunk arrived on the scene, Moreno could not answer basic questions, and his demeanor and mannerisms suggested that he was under the influence of a controlled substance. . . .
- When Anderson arrived, he found a meth pipe with residue on it. . . .
- [Anderson] also counted Moreno's resting pulse at 140 beats per minute, noting in his report that this was "significantly above the normal range of 60 to 90" beats per minute. . . .
- Considering all the facts at the scene, Anderson made a determination that [Moreno] was unable to care for himself. . . .

(Doc. 329 at 11.)

Defendants argue that, even accepting these facts as true, Anderson and Rembold are entitled to qualified immunity because "[t]he general principle of *D'Braunstein* is too broad and its facts are readily distinguishable from the facts here to consider it to be factually clear precedent." (Doc. 329 at 13.)

The Court has twice explained its rationale for finding that the Fourth Amendment right at issue here was clearly established at the time of Moreno's arrest. (*See* Doc. 314 at 19–20; Doc. 139 at 18–21.) It follows that the Court "disagrees with the County Defendants as to the characterization and substance of the constitutional arguments

underlying their qualified immunity claim." *J.P.*, 2018 WL 3845890, at *2. However, "such disagreement does not meet the demanding standard for certifying an appeal as frivolous, namely that the appeal be so baseless that it does not invoke appellate jurisdiction, such as when the disposition is so plainly correct that nothing can be said on the other side." *Id.* (citation modified); *see also In re George*, 322 F.3d at 588 (holding that an appeal is frivolous only if "the arguments of error are wholly without merit"). Given this high bar, and the Supreme Court's admonitions that "clearly established law should not be defined at a high level of generality" but "particularized to the facts of the case," *White*, 580 U.S. at 79 (citation modified), the Court finds that it would be inappropriate to certify Defendants' appeal as frivolous.[1] "In the absence of such certification, the district court is automatically divested of jurisdiction to proceed with trial pending appeal." *Chuman*, 960 F.2d at 105.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Certify (Doc. 322) is **DENIED**.

The pretrial dates remain **STAYED** and the Final Pretrial Conference remains **VACATED**. (*See* Doc. 327 at 3.) The Court will reset these dates or set further proceedings after the Ninth Circuit rules on Defendants' appeal.

**IT IS SO ORDERED.**

Dated: October 5, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[1] Because this issue represents a non-frivolous basis for appeal, the Court declines to reach the Parties' arguments regarding the frivolity of an appeal as to the Court's determination that Deputies Wilt and Sherman also were not entitled to qualified immunity.